# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

**GEOTAG INC.,**

    **Plaintiff,**

**v.**

| | |
|---|---|
| **FRONTIER COMMUNICATIONS CORP.,** *et al.*, | **2:10-cv-00265** |
| **YELLOWPAGES.COM, LLC,** *et al.*, | **2:10-cv-00272** |
| **GEORGIO ARMANI S.P.A.;** *et al.*, | **2:10-cv-00569** |
| **AROMATIQUE, INC.;** *et al.*, | **2:10-cv-00570** |
| **GUCCI AMERICA, INC.;** *et al.*, | **2:10-cv-00571** |
| **STARBUCKS CORP.;** *et al.*, | **2:10-cv-00572** |
| **RENT A CENTER, INC.;** *et al.*, | **2:10-cv-00573** |
| **THE WESTERN UNION COMPANY;** *et al.*, | **2:10-cv-00574** |
| **ROYAL PURPLE, INC.;** *et al.*, | **2:10-cv-00575** |
| **YAKIRA, L.L.C.;** *et al.*, | **2:10-cv-00587** |
| **WHERE 2 GET IT, INC.;** *et al.*, | **2:11-cv-00175** |
| **ZOOSK, INC.** | **2:11-cv-00403** |
| **EYE CARE CENTERS OF AMERICA, INC.** | **2:11-cv-00404** |
| **AMERCO,** *et al.* | **2:11-cv-00421** |
| **7-ELEVEN, INC.,** *et al.*, | **2:11-cv-00424** |
| **SUNBELT RENTALS, INC.** | **2:11-cv-00425** |
| **CLASSIFIED VENTURES, LLC.** | **2:11-cv-00426** |
| **CANON INC. and,** <br> **CANON U.S.A., INC.,** | **2:12-cv-00043** |
| **AMERICAN APPAREL INC.,** | **2:12-cv-00436** |
| **ABERCROMBIE & FITCH CO.,** | **2:12-cv-00437** |
| **AMERICAN EAGLE OUTFITTERS INC.,** | **2:12-cv-00438** |
| **ANN INC.,** | **2:12-cv-00439** |
| **BURLEIGH POINT LTD.,** | **2:12-cv-00441** |
| **CATALOGUE VENTURES, INC.,** | **2:12-cv-00442** |
| **BURBERRY LIMITED,** | **2:12-cv-00443** |
| **BURLINGTON FACTORY WAREHOUSE** <br> **CORPORATION,** | **2:12-cv-00444** |
| **CACHE INC.,** | **2:12-cv-00445** |
| **THE WILLIAM CARTER COMPANY,** | **2:12-cv-00446** |

| | |
|---|---|
| **CHARMING SHOPPES INC.,** | **2:12-cv-00447** |
| **CHICO'S FAS INC.,** | **2:12-cv-00448** |
| **CITI TRENDS INC.,** | **2:12-cv-00449** |
| **CLAIRE'S BOUTIQUES, INC.,** | **2:12-cv-00450** |
| **COLDWATER CREEK INC.,** | **2:12-cv-00451** |
| **DAVID'S BRIDAL INC.,** | **2:12-cv-00452** |
| **DEB SHOPS INC.,** | **2:12-cv-00453** |
| **DELIAS INC.,** | **2:12-cv-00454** |
| **DESTINATION MATERNITY CORPORATION,** | **2:12-cv-00455** |
| **DIESEL U.S.A. INC.,** | **2:12-cv-00456** |
| **DONNA KARAN INTERNATIONAL INC.,** | **2:12-cv-00457** |
| **LVMH MOET HENNESSY LOUIS VUITTON INC.,** | **2:12-cv-00458** |
| **DOTS, LLC,** | **2:12-cv-00459** |
| **DRAPER'S & DAMON'S INC.,** | **2:12-cv-00460** |
| **EDDIE BAUER LLC,** | **2:12-cv-00461** |
| **ESPRIT US RETAIL LIMITED,** | **2:12-cv-00462** |
| **FACTORY CONNECTION LLC,** | **2:12-cv-00463** |
| **THE FINISH LINE INC.,** | **2:12-cv-00464** |
| **FOREVER 21 RETAIL INC.,** | **2:12-cv-00465** |
| **FORMAL SPECIALISTS LTD.,** | **2:12-cv-00466** |
| **FREDERICK'S OF HOLLYWOOD STORES INC.,** | **2:12-cv-00467** |
| **GROUPE DYNAMITE, INC. D/B/A GARAGE,** | **2:12-cv-00468** |
| **GUESS? RETAIL INC.,** | **2:12-cv-00469** |
| **H&M HENNES & MAURITZ LP,** | **2:12-cv-00470** |
| **HANESBRANDS INC.,** | **2:12-cv-00471** |
| **HOT TOPIC INC.,** | **2:12-cv-00472** |
| **HUGO BOSS FASHION INC.,** | **2:12-cv-00473** |
| **J. CREW GROUP INC.,** | **2:12-cv-00474** |
| **JIMMY JAZZ INC.,** | **2:12-cv-00475** |
| **JOS. A. BANK CLOTHIERS INC.,** | **2:12-cv-00476** |
| **ALCO STORES INC.** | **2:12-cv-00477** |
| **FRED'S INC.,** | **2:12-cv-00478** |
| **BAKERS FOOTWEAR GROUP,** | **2:12-cv-00479** |
| **BROWN SHOE COMPANY INC.,** | **2:12-cv-00480** |

| | |
|---|---|
| **COLLECTIVE BRANDS INC.,** | **2:12-cv-00481** |
| **CROCS INC.,** | **2:12-cv-00482** |
| **DSW INC. D/B/A DSW SHOE INC.,** | **2:12-cv-00483** |
| **FLEET FEET INC.,** | **2:12-cv-00484** |
| **GENESCO INC.,** | **2:12-cv-00486** |
| **HEELY'S INC,** | **2:12-cv-00487** |
| **JUSTIN BOOT COMPANY,** | **2:12-cv-00488** |
| **AMERICAN GREETINGS CORPORATION,** | **2:12-cv-00520** |
| **HALLMARK CARDS, INC.,** | **2:12-cv-00521** |
| **HICKORY FARMS INC.,** | **2:12-cv-00522** |
| **SPENCER GIFTS LLC,** | **2:12-cv-00523** |
| **INTERNATIONAL COFFEE & TEA, LLC,** | **2:12-cv-00524** |
| **THINGS REMEMBERED, INC.,** | **2:12-cv-00525** |
| **THE YANKEE CANDLE COMPANY,** | **2:12-cv-00526** |
| **BOSE CORPORATION,** | **2:12-cv-00527** |
| **GUITAR CENTER INC.,** | **2:12-cv-00528** |
| **PROGRESSIVE CONCEPTS INC.,** | **2:12-cv-00529** |
| **24 HOUR FITNESS WORLDWIDE INC.,** | **2:12-cv-00530** |
| **BALLY TOTAL FITNESS CORPORATION,** | **2:12-cv-00531** |
| **BARE ESCENTUALS INC.,** | **2:12-cv-00532** |
| **BIOSCRIP INC.,** | **2:12-cv-00533** |
| **CRABTREE & EVELYN,** | **2:12-cv-00534** |
| **CURVES INTERNATIONAL INC.,** | **2:12-cv-00535** |
| **GOLD'S GYM INTERNATIONAL INC.,** | **2:12-cv-00536** |
| **GREAT CLIPS INC.,** | **2:12-cv-00537** |
| **L.A. FITNESS INTERNATIONAL LLC,** | **2:12-cv-00538** |
| **LIFE TIME FITNESS INC.,** | **2:12-cv-00539** |
| **M.A.C. COSMETICS INC.,** | **2:12-cv-00540** |
| **MERLE NORMAN COSMETICS,** | **2:12-cv-00541** |
| **VITAMIN COTTAGE NATURAL FOOD MARKETS, INC.,** | **2:12-cv-00542** |
| **REGIS CORPORATION,** | **2:12-cv-00543** |
| **SALLY BEAUTY SUPPLY LLC,** | **2:12-cv-00544** |
| **SEPHORA USA INC.,** | **2:12-cv-00545** |
| **TONI&GUY USA, LLC,** | **2:12-cv-00546** |

| | |
|---|---|
| **ULTA SALON, COSMETICS & FRAGRANCE INC.,** | **2:12-cv-00547** |
| **VITAMIN SHOPPE INDUSTRIES, INC.,** | **2:12-cv-00548** |
| **EYEMART EXPRESS, LTD.,** | **2:12-cv-00549** |
| **LUXOTTICA RETAIL NORTH AMERICA INC.,** | **2:12-cv-00550** |
| **NATIONAL VISION INC.,** | **2:12-cv-00551** |
| **U.S. VISION INC.,** | **2:12-cv-00552** |
| **WILD BIRDS UNLIMITED INC.,** | **2:12-cv-00553** |
| **JOS. A. BANK CLOTHIERS INC.,** | **2:12-cv-00554** |
| **BUTH-NA-BODHAIGE INC.,** | **2:12-cv-00555** |
| **PSP GROUP, LLC,** | **2:12-cv-00556** |
| **WHERE 2 GET IT, INC.;** *et al.,*<br>    **Plaintiff,**<br>**v.**<br>**GEOTAG INC.,**<br>    **Defendant.** | **2:12-cv-00149** |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO ENTER PROPOSED CASE MANAGEMENT SCHEDULE, POSTPONE THE PRETRIAL CONFERENCE AND TRIAL SETTING DATE FOUR MONTHS, AND <u>CREATE A SINGLE CASE NUMBER FOR CONSOLIDATED FILINGS</u>**

Defendants respectfully submit this opposition to GeoTag Inc.'s ("GeoTag") Motion to Enter Proposed Case Management Schedule, and Postpone the Pretrial Conference and Trial Setting Dates Four Months (the "Motion").

## I.    INTRODUCTION

In its latest attempt to avoid litigating these cases on the merits, GeoTag seeks an order: a) dividing the Defendants into arbitrary groups for mediation, discovery, pretrial, and trial purposes; b) imposing an early, expanded, and complicated mediation process with severe and one-sided limits on discovery until the conclusion of mediation; c) postponing dispositive briefing and expert disclosures until after mediation; and d) postponing the Final Pretrial Conference and Trial Setting by four months, to February 15, 2014 (apparently for the first proposed group of Defendants, and an additional, undetermined postponement for later groups).

GeoTag neglects to mention in making this proposal that it is seeking essentially the same case schedule and relief that it sought in its original Case Management Proposal submitted on June 27, 2012.  Dkt. No. 450.[1]  This Court rejected GeoTag's original proposal by entering the Scheduling Order currently in effect for the GeoTag cases, and nothing has changed since that time that would warrant reconsideration of the previously imposed schedule.  On the contrary, the progress the Parties have made under the current schedule militates against the changes sought by GeoTag.

On April 12, 2012, the Court issued a Joint Discovery/Case Management Plan in all of the GeoTag cases.  Dkt. No. 432.  Paragraph 8(b) of that plan directed the Parties, *inter alia*, to submit a proposal for the efficient management of this litigation.  Pursuant to the Court's

---

[1] For ease of reference, all of the references to docket entries in this Memorandum will be to the docket in GeoTag, Inc. v. Aromatique, Inc., et al., 2:10-cv-570-MHS.  In most cases, parallel references can be found in the dockets to the other GeoTag cases that are included in the caption of this document.

directive, on June 27, 2012, the Parties submitted their Joint Discovery and Case Management Plan.  Dkt. No. 450.  In that submission, GeoTag made nearly the same proposal that it urges the Court to adopt now.  The Court considered and rejected GeoTag's proposal by entering the Scheduling Order on August 3, 2012, setting a mediation completion deadline of May 2, 2013, the Pretrial Conference and Trial Setting for October 7, 2013, and reserving any determination regarding trial grouping until the pretrial conference.

Nothing has occurred since the entry of the current Scheduling Order that would constitute good cause for the relief sought by GeoTag in its Motion.  Indeed, every circumstance cited by GeoTag as a purported basis for its requested relief existed at the time of the Court's entry of the August Scheduling Order, and thus GeoTag cannot point to any occurrence warranting disturbance of the schedule set by the Court in the Scheduling Order.

First, GeoTag claims that its Motion is brought pursuant to Paragraph 8(b) of the Court's April 12, 2012 Joint Discovery/Case Management Plan.  However, as the Court required, the Parties already addressed that paragraph when they each submitted Joint Discovery/Case Management Plans in June.  Indeed, GeoTag goes so far as to chastise Defendants for not being "willing to propose their own case management procedure."  Motion at 29, 33.  But Defendants did exactly that over five months ago, when they submitted their proposed case management plan on June 27, 2012.  The Court considered both GeoTag's and Defendants' proposals, and entered the August Scheduling Order instead.

Second, GeoTag claims that its proposed four-month delay of the pretrial and the trial dates is necessary to allow Microsoft and Google's Declaratory Judgment Action in Delaware (the "Delaware Action") to proceed to trial before the Texas suits.[2]  The Delaware Action,

---

[2] The Delaware Action is set for trial in December 2013.

however, was filed long before the August Scheduling Order and, in fact, large groups of Defendants twice brought motions before the Court to stay the GeoTag actions in favor of the Delaware Actions.  See Dkt. Nos. 269 and 363.  The Court denied Defendants' stay motions and Defendants have since expended considerable time and resources litigating these cases, up through and including preparing invalidity contentions and claim construction tasks as required by the August Scheduling Order.

Moreover, GeoTag's purported desire to delay these actions in favor of the Delaware Action is contradicted by its vigorous opposition to Defendants' motions to stay.  In opposition to those motions, GeoTag argued that "the Delaware declaratory judgment actions will not resolve GeoTag's infringement claims against the Defendants," that the Delaware Action "will not completely dispose of, or even simplify, all of the claims before this Court," and that "[a] stay of this [Texas] litigation will merely result in delay of the resolution of GeoTag's claims and duplicative litigation[.]"  See, e.g., Dkt. No. 472.  GeoTag cannot have it both ways.  Having taken the position that these cases should not be stayed pending the outcome of the Delaware Action, GeoTag cannot turn around now and argue the exact opposite to obtain a procedural advantage over Defendants.

Setting aside GeoTag's failure to demonstrate good cause for its significant alterations to the Scheduling Order, GeoTag's Motion also should be denied because it fails to demonstrate that any efficiencies would result from the proposal.  With respect to the proposed delay in favor of the Delaware Action, it is premature to assume that any modification will be necessary.  While Defendants agree that the Delaware case should proceed to trial first, the Court can address that issue at the time of the Pretrial Conference.  By that time, the Court (and the Parties) will be in a

far better position to determine whether any disposition of the Delaware Action—by settlement, dispositive motion, or trial—impacts the trial schedule in this action.

GeoTag's proposed mediation process fares no better.  The Court's Scheduling Order currently requires mediation to be completed by May 2, 2013.  The Court set that deadline with full knowledge of the number of Parties in these actions, and with the expectation that the Parties would complete mediation by that deadline.  GeoTag has known about the deadline for six months and yet has waited until this Motion to declare that it will be unable to complete the required mediations under the existing schedule.  More importantly, GeoTag's proposal should be denied because it is not likely to improve the success rate of mediation.  On the contrary, the Parties have significant disagreements over claim constructions, including whether—as GeoTag asserts—the claim constructions from the *Geomas* litigation should be adopted by this Court for the current actions.[3]  Defendants believe that allowing mediation to proceed according to the current schedule will allow time for resolution of claim construction issues (and potentially dispositive infringement and invalidity issues) before mediation, which will greatly enhance the likelihood of success in those proceedings.  In the meantime, any Parties interested in engaging in settlement discussions are free to do so, including voluntarily opting to mediate sooner.

---

[3] In *Geomas*, the claim terms in the patent at issue were construed by a magistrate judge in this district and no request for reconsideration or appeal was ever sought.  Indeed, the case settled before any trial.  Needless to say, that previous claim construction is not binding on this Court, and Defendants have requested construction of new terms not construed in that litigation, construction for the first time by the Court of terms that were previously stipulated, and clarifications regarding several of the prior constructions.

## II.      STATEMENT OF FACTS

Beginning in July 2010 and extending through August 2012, GeoTag filed 108 cases in the United States District Court for the Eastern District of Texas alleging that more than 400 Defendants infringe U.S. Patent No. 5,930,474 ("the '474 patent").

### A.      GeoTag's June 2012 Proposed Joint Discovery and Case Management Plan Proposed Limited Pre-Mediation Discovery and Divided Defendants into Similarly Situated Groups of Defendants for Early Mediation, Pretrial Matters, and Trial

On April 12, 2012, this Court issued its Order to Meet, Report, and Appear at Scheduling Conference.  See, e.g., Dkt. No. 432.  The Order required the Parties to meet and file a joint report with their proposed "detailed case management plan" by June 27, 2012, in advance of a Scheduling Conference to be held on July 11, 2012.  Id. at 3. In an attached Form Case Management Plan, the Court set forth a proposed schedule for the management of these cases, but required the Parties to submit their own "proposed discovery/case management plan," including any proposal "for managing the cases efficiently," such as "whether the cases and parties should proceed in groups and how those groups would be defined."  Id. at Attached Form Joint Discovery/Case Management Plan at 9-10.  The Court's proposed schedule contemplated deadlines beginning in August 2012 and continuing through the Final Pretrial Conference and Trial Setting on October 7, 2013.  Id. at 11-14.

The Parties complied with the Court's Order and submitted a Joint Discovery and Case Management Plan on June 27, 2012.  Dkt. No. 450.  The plan that GeoTag proposed in that joint filing bears a striking resemblance to the proposal it makes in the present Motion.  Just as it does in the present Motion, GeoTag urged the Court in June to adopt procedures limiting the Parties' disclosures and discovery to issues related to early mediation to "facilitate informal resolution of GeoTag's claims with respect to many Defendants without the need for full-blown discovery."

- 9 -

Id. at 18.   In both GeoTag's present Motion and its June 2012 proposal, GeoTag cites Judge

Davis' orders in Wordcheck Tech., LLC v. Alt-N Techs., Ltd., No. 6:10-cv-457, Dkt. No. 525

(E.D. Tex. July 20, 2011) in support of its request for "early mandatory mediation."   Id. at 19.

Specifically, GeoTag proposed "early mandatory mediation with select groups of defendants,"

just as it does in the present Motion.   Id. at 23.

In its proposed case management order, GeoTag suggested that its claims could be

"efficiently disposed of by organizing the Defendants into groups for pretrial and trial purposes."

Dkt. No. 450-1 at 1.   GeoTag proposed organizing the Defendants "into groups of Defendants

using the same or substantially the same technology to implement their accused store locator and

job locator services."   Id. at 2 (emphasis added).

**B.      The Court Rejected GeoTag's Proposal When It Issued the August 3, 2012, Scheduling Order**

In its August 3, 2012 Scheduling Order (Dkt. No. 465) the Court adopted essentially the

same schedule that it had proposed in its April 12, 2012 Order, rejecting both GeoTag's and the

Defendants' proposed case management plans.   Id. at 4-6.   The Court stated that it had "reviewed

and taken into consideration the parties' Joint Discovery/Case Management Plan."   Id. at 6.

Notably, the Court declined to limit discovery prior to mediation, and did not divide the

Defendants into groups of any kind for early mediation, pretrial, and trial purposes, as GeoTag

had requested.

The Order is replete with admonitions to the Parties to comply with the Court's schedule.

The Court noted that its deadlines were "firmly in place," id. at 6, and that the discovery deadline

would not be extended unless the extension "**does not affect** the trial setting, dispositive motion

deadline, challenges to experts deadline, or pretrial submissions deadline …."   Id. at 11

(emphasis in original).

- 10 -

### C.      The Court Has Previously Rejected Major Revisions of its Scheduling Order

The Court has consistently maintained the existing Scheduling Order.  For example, most Defendants in the Texas actions previously moved to stay these actions pending the resolution of the Delaware Action.  See Dkt Nos. 269 and 363.  GeoTag opposed those motions.  On August 27, 2012, the Court denied the Defendants' motions noting that "the principles of judicial efficiency and economy are best served by allowing the litigation to proceed."  Dkt. No. 501 at 9.

Three days after denying Defendants' previous stay request, the Court denied GeoTag's Motion for its counsel to withdraw from these cases.  Dkt. No. 505.  The Court cited the schedule it had adopted in these cases:  "On the eve of the deadlines related to claim construction, the Court will not grant withdrawal without substitute counsel capable of prosecuting Plaintiff's claims within the scheduled time frame."  Id. at 15 (emphasis added).  The Court refused to stay the actions or substantively modify its established schedule, instead requiring GeoTag to find substitute counsel capable of prosecuting its claims within the scheduled time frame.  Id.  The Parties are further along in the claim construction process, making the Court's earlier reasoning all the more salient now.

### D.      The Litigation Has Progressed Pursuant to the Scheduling Order

As the Court's Scheduling Order requires, the Parties have proceeded to litigate these cases.  The Parties have served their initial disclosures, infringement contentions, and invalidity contentions.  They have engaged in written discovery and document production, including the provision of source code for many of the accused instrumentalities.  The Parties have also negotiated and submitted proposed protective orders and addressed issues regarding joinder, venue, and counsel of record.   Further, as GeoTag acknowledges, claim construction is advanced: the Parties have exchanged proposed claim terms and claim constructions, filed joint claim construction and prehearing statements, and provided the Court with technology tutorials.

As a result, Defendants have incurred significant litigation costs.  Under the current Scheduling

Order, the claim construction hearing is scheduled to take place in less than two months, on

January 24, 2013.

## III.     ARGUMENT

GeoTag now seeks to revise the Scheduling Order to provide for a Case Management

Plan that is strikingly similar to the GeoTag proposal the Court considered, and rejected, in

August.   Specifically, GeoTag seeks three major revisions to the Scheduling Order:  a) the

division of Defendants into 35 groups[4] for purposes of mediation, discovery, pretrial

proceedings, and trial; b) early mediation and a limitation on discovery until the conclusion of

mediation; and c) a four-month postponement of the final Pretrial Conference and Trial Setting

and many intervening deadlines (for the first group of Defendants, with further postponements

for the remaining 35 groups).

As GeoTag correctly notes, Defendants did not agree to GeoTag's proposal during the

Parties' meet and confer sessions.  Defendants did inform GeoTag's counsel that they would

consider a stand-alone proposal for staying the entire litigation until the conclusion of the

Delaware declaratory judgment action, but GeoTag would not contemplate such a stay.  Given

this impasse, Defendants oppose GeoTag's Motion and do not believe that any modification of

the Court's current schedule is necessary or would be beneficial.

---

[4] GeoTag also proposes a 36th group of Defendants, specifically "identified Microsoft Corp. customers" which would be fully stayed until a decision has been rendered by a jury in the Delaware Action.  Motion at 32-33.

### A.   The Court Should Not Postpone the Final Pretrial Conference and Trial Setting by Four Months[5]

The Court's Scheduling Order contemplates a Final Pretrial Conference and Trial Setting on October 7, 2013, and anticipates that the trial will be set within four weeks of that date.  Dkt. No. 535 at 6, 21.  GeoTag now seeks to postpone the Final Pretrial Conference by four months— to February 15, 2014—ostensibly to ensure that the Delaware Action will proceed to its scheduled December 2013 trial first.

Although Defendants would prefer that the Delaware Action proceed to trial ahead of trials in the Texas actions—as Defendants indicated in their opposed motion to stay these cases—it is premature to adjust the schedule in these actions based on the Delaware Action.  In the intervening months between now, claim construction, and the Final Pretrial Conference in these cases, the Delaware Action and some portion of these Texas actions may be resolved through settlement, summary judgment, or otherwise.  Alternatively, the Delaware case may be continued for an extended period of time by that court.  Regardless of what occurs in the Delaware Action, this Court (and any remaining Parties to this litigation) will be in a better position to consider all of those factors at the Final Pretrial Conference on October 7, 2013.  At that time, should the Court determine that it is desirable for these cases to proceed to trial after the resolution of the Delaware Action, the Court can ensure that outcome when it sets trial dates.  Postponing the Final Pretrial Conference at this early date is unnecessary and may needlessly delay resolution of the Texas cases on their merits.

---

[5] Defendant Zoosk, Inc. ("Zoosk") (*GeoTag Inc., v. Zoosk, Inc.*, 2:11-cv-00403) does not oppose GeoTag's motion to the limited extent it seeks to postpone the Final Pretrial Conference and Trial Setting Date by four months—from October 7, 2013 to February 15, 2014—in order to ensure the Delaware Action proceeds to trial before this action.  Thus, Zoosk joins all sections of this motion, except Section III.A.

**B.** **The Court Should Deny GeoTag's Motion for Limited Discovery, Early Mediation, and Grouping of Defendants for Mediation, Pretrial and Trial Purposes**

GeoTag has further requested that the Court adopt a case management procedure that does the following:  a) requires early mediation between GeoTag and the Defendant groups; b) severely limits discovery prior to mediation; c) requires appointment of a discovery master; d) divides Defendants into 35 separate groups for mediation, pretrial, and trial purposes; and e) stages the groups for discovery, pretrial proceedings, and trial after the mediation.  The Court should reject GeoTag's proposal.

As discussed above, GeoTag's current proposal is essentially a re-worked version of the proposal it submitted to the Court on June 27, 2012, when it urged the Court to adopt procedures used in the <u>Wordcheck</u> litigation by Judge Davis (No. 6:10-cv-457, Dkt. No. 450 at 18-19); proposed severe limitations on pre-mediation discovery (<u>id.</u> at 18); suggested "early mandatory mediation" (<u>id.</u> at 19); and proposed that Defendants be divided into "groups" for mediation, pretrial, and trial purposes  (<u>id.</u> at 23).  The Court correctly rejected GeoTag's proposal when it adopted its August 3, 2012 Scheduling Order.

More importantly, GeoTag's recycled proposal is even more substantively objectionable now than it was when the Court rejected it months ago.  First, GeoTag's groupings are not logically related to the actual websites or infringement issues.  GeoTag's proposed groups do not attempt to take into account the similarities and distinctions between the accused products (*e.g.*, whether the product utilizes Google's, Microsoft's, another third-party's service, or their own homegrown service), and therefore do not relate to any common infringement allegations against the accused products.  Instead, GeoTag's proposal groups Defendants into purported industry groups—which GeoTag apparently believes will aid its efforts to extract substantial settlements from Defendants.  Further, grouping Defendants by market segment potentially exposes each

- 14 -

Defendant's confidential business information to its competitors.  GeoTag's proposed groupings thus depart from GeoTag's original case filing and groupings, and appear to serve only GeoTag's settlement strategy, not effective case management.

Moreover, this is not the appropriate time to group Defendants for trial.  The number, characteristics, and identity of Defendants will likely change substantially after the Markman ruling and any ensuing summary judgment rulings.  See, e.g., Parallel Networks, LLC v. Abercrombie & Fitch, No. 6:10-cv-111 at Dkt. No. 566 at 10 (E.D. Tex., Aug. 12, 2011) (wherein the court conducted a Markman hearing that resulted in summary judgment dismissing the claims against 99 of the 112 Defendants).   Courts in this district look to a number of factors to determine the best trial plan in complex multi-defendant cases and have determined that these issues are best addressed after discovery is complete, the number of patents, claim terms and invalidity references has been narrowed, expert reports have been filed, and perhaps experts deposed.  Norman IP Holdings, LLC v. Lexmark Intern., Inc., No. 6:12-cv-508 at Dkt. No. 1 at 5-6 (E.D. Tex., Aug. 10, 2012).   Only after careful consideration of these factors, and the particular circumstances of the case, does the court fashion a trial plan.  Id.

Second, GeoTag's proposed modifications to the schedule would not provide Defendants with necessary discovery.   GeoTag suggests restricting discovery to interrogatories and document production requests that are targeted toward helping GeoTag calculate its settlement demands while relieving GeoTag from serving damages and expert disclosures and shielding GeoTag from the discovery that Defendants need to evaluate the merits of GeoTag's allegations. For example, Defendants will need discovery into GeoTag's basis for its damages allegations, as some of the accused instrumentalities are freely available websites that may not generate revenue and, in many cases, are built on commoditized, third-party software.  Defendants will also need

deposition testimony explaining GeoTag's alleged products and commercialization attempts as well as GeoTag's complex corporate history and its delay of over a decade in filing suit. Indeed, as part of that complex corporate history, GeoTag's ownership of the patent-in-suit has been called into question in a litigation recently filed in Florida. See GeoTag Inc. v. European Securities Ltd., et. al. No. 8:12-cv-01923 (M.D. Fla., filed on August 23, 2012). In light of the cloud this recent case has cast over GeoTag's ownership of the '474 patent, Defendants need to investigate GeoTag's right to bring this suit at all.

In any event, there is simply no basis for GeoTag's request to further limit discovery prior to mediation. The earliest GeoTag cases are now nearly two and a half years old. At this point, these cases should proceed unencumbered by interim steps that consume time and money but fail to bring the Parties closer to resolution. The Parties have engaged in significant litigation and incurred significant expense to date. Thus, the time for early mediation has come and gone. To the extent that GeoTag has requested the relief sought in its Motion solely to ease the burden on itself, the Court should deny the motion. GeoTag chose to file more than one hundred lawsuits alleging infringement by more than 400 Defendants; it cannot now complain about the difficulty of litigating against so many Defendants.

Additionally, GeoTag's attempts to move *all* the post claim-construction deadlines according to the groups of Defendants should be rejected. GeoTag's proposal would tie the deadlines for expert discovery, summary judgment, and other pre-trial deadlines to the mediation dates for each of the 35 proposed groups. This would unfairly delay resolution of these matters for Defendants, who, as discussed above, have already incurred significant expense in defending against GeoTag's allegations. It also would impede Defendants' ability to comply with the Court's orders concerning common written discovery and deposition scheduling. Any

difficulties GeoTag has in meeting the current deadlines are of its own making, and do not constitute good cause to amend the Court's Scheduling Order.

Finally, compelling early mediation is unnecessary and unproductive.  The Parties are aware of the Court's mediation requirements in the Scheduling Order and can work to meet those deadlines.  Although GeoTag has not attempted to mediate any of the pending cases, it has communicated settlement proposals to many Defendants in these cases, and has, in fact, settled with a few of them.  At this time, however, mediation with most of the remaining Defendants is unlikely to be productive until the Court construes the disputed claims after the January 24, 2013, claim construction hearing.  Defendants are focused on briefing and preparing for the claim construction hearing and believe that the claim construction order will be followed by letter briefing regarding dispositive motions, and that the Court's resolution of these proceedings will have a significant effect on the Parties' valuations of these cases.[6]

The cases GeoTag cites to support its proposed case management plan requiring early mediation are inapplicable to the present cases.  For example, the court ordered early mediation in Wordcheck, but unlike these cases, more than one year remained before the claim construction hearing.  Wordcheck Tech., LLC v. Alt-N Techs., Ltd., No. 6:10-cv-457 at Dkt. No. 525 at 1 (E.D. Tex., July 20, 2011); Wordcheck Tech., LLC v. Alt-N Techs., Ltd., No. 6:10-cv-457 at Dkt. No. 707 at 1 (E.D. Tex., Jan 11, 2012).  Similarly, in Pacid, early mediation was ordered when the Markman hearing was nearly a year away.  Pacid Group LLC v. Cisco Sys., Inc. et al., No. 6:09-cv-324 at Dkt. No. 295 at 1 (E.D. Tex., June 20, 2011).  In Uniloc, the court ordered

---

[6] GeoTag asserts that early mediation will be productive, even if it occurs before a claim construction order, because a number of the claim terms in the patent at issue have previously been construed by a magistrate judge in this district.  However, the previous claim construction is not binding on this Court, and Defendants have requested construction of new terms not construed by the Court in that litigation, construction for the first time by the Court of terms that were previously stipulated, and clarifications regarding several of the prior constructions.

early mediation, but left trial management decisions for <u>after</u> the <u>Markman</u> ruling.  <u>Uniloc USA, Inc. et al. v. Sony Corp. of Am., et al.</u>, No. 6:10-cv-373 at Dkt. No. 126 at 2-3 (E.D. Tex., May 20, 2011).  Factoring heavily in the <u>Uniloc</u> court's decision to order early mediation was the fact that—unlike in these cases—the patent at issue had already undergone extensive scrutiny including a jury trial and numerous appeals, thereby making early settlement discussions more productive and viable.  <u>See id.</u> at 1.  Given the imminence of the <u>Markman</u> hearing in this case, the Parties' and the Court's resources would be best spent by proceeding under the current Scheduling Order and waiting until after the <u>Markman</u> ruling to determine the most effective and efficient case management plan going forward.

Moreover, the allegedly infringing websites in these cases are unlike the accused products in <u>Wordcheck</u>, <u>Pacid</u>, and <u>Uniloc</u>, where early mediation was facilitated by the discrete, revenue-generating nature of the accused products.  In <u>Pacid</u>, for example, the accused products were servers with encryption technology.  With that type of accused product, damages models commonly require a simple calculation of sales number multiplied by a royalty rate. Under those circumstances, early mediation can be effective by using limited discovery to establish sales numbers and licensing history, allowing the Parties to focus the mediation on negotiating an appropriate royalty rate.  By comparison, the majority of the accused products in the present cases are store and job locators that are freely provided on the Internet, do not directly generate revenue, and, in many cases, are commoditized third-party products that Defendants do not own or control.  Given those facts, most Defendants would be willing to consider reasonable settlement amounts, but thus far GeoTag has made unreasonably large demands far in excess of the value of this litigation.  To support any damages theory on the scale that GeoTag has sought to date, GeoTag would need to prepare Defendant-specific expert reports, and Defendants would,

in turn, require an opportunity to question any experts on the bases for their reports.  In short, this litigation is not amenable to early mediation procedures that may have been successful in other patent cases.

For the foregoing reasons, the Court should deny GeoTag's proposed plan to modify the existing case schedule or to impose additional obligations on the Parties beyond those contained in this Court's previous orders.

## IV.   GEOTAG'S MINISTERIAL REQUEST FOR A COMMON FILING NUMBER

Should the Court deem it appropriate and administratively feasible, Defendants do not oppose GeoTag's request that a common case number be created for the convenience of filing so that filings applicable to a majority of the cases can be made in a single case number, provided that it is ministerial only in nature and does not represent a formal "consolidation" for trial or mediation.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny GeoTag's case management proposal including early mediation and staged discovery and that the Court deny GeoTag's motion to postpone the Pretrial Conference by four months. If the Court deems it appropriate, Defendants do not oppose a single case filing number for common filings.

Dated: November 28, 2012               Respectfully submitted,


                                       */s/ Willem G. Schuurman*
                                       Willem G. Schuurman (TX Bar No. 17855200)
                                       Avelyn M. Ross (TX Bar No. 24027871)
                                       Ajeet P. Pai (TX Bar No. 24060376)
                                       James D. Shead (TX Bar No. 24070609)
                                       Patrick Doll (TX Bar No. 24078432)
                                       VINSON & ELKINS  LLP
                                       2801 Via Fortuna, Suite 100
                                       Austin, TX 78746-7568
                                       Tel: (512) 542-8400
                                       Fax: (512) 542-8612
                                       bschuurman@velaw.com
                                       aross@velaw.com
                                       apai@velaw.com
                                       jshead@velaw.com
                                       pdoll@velaw.com


                                       **ATTORNEYS FOR DEFENDANTS
                                       7-ELEVEN, INC., BARE ESCENTUALS, INC.,
                                       BURBERRY LIMITED, CHRISTIAN DIOR
                                       PERFUMES, LLC, CRABTREE & EVELYN,
                                       LTD., DONNA KARAN INTERNATIONAL
                                       INC., GOLD'S GYM INTERNATIONAL, INC.,
                                       LVMH MOET HENNESSY LOUIS VUITTON
                                       INC., AND SEPHORA USA, INC**


### CERTIFICATE OF SERVICE

   The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 28, 2012, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                                       */s/ Willem G. Schuurman*
                                       Willem G. Schuurman


US 1674814